1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

SHIZHE SHEN and CHAORAN YU,

              Plaintiffs,

    v.

IRENE MARTIN, San Bernardino
Field Office Director, U.S.
Citizenship and Immigration
Services; UR M. JADDOU,
Director, U.S. Citizenship and
Immigration Services;[1]
ALEJANDRO MAYORKAS, Secretary,
U.S. Department of Homeland
Security; MERRICK B. GARLAND,
U.S. Attorney General,

              Defendants.

CASE NO. CV 21-6244 AS

**MEMORANDUM OPINION AND ORDER
DIRECTING JUDGMENT IN FAVOR OF
DEFENDANTS AND DISMISSING CASE**

**INTRODUCTION**

On August 27, 2019, Plaintiff filed a Complaint for
Declaratory Relief and Injunctive Relief ("Complaint") against
Defendants pursuant to the Administrative Procedure Act ("APA"), 5

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d), Director
Jaddou is substituted for her predecessor.

U.S.C. § 701 et seq., challenging the denial of a Form I-130 Petition for Alien Relative ("I-130 petition" or "petition"), filed on October 4, 2016, by Plaintiff Chaoran Yu, a United States citizen, on behalf of her husband, Plaintiff Shizhe Shen, a Chinese citizen. (Dkt. No. 1). The U.S. Citizenship and Immigration Services ("USCIS") denied the I-130 petition on September 6, 2018, pursuant to section 204(c) of the Immigration and Nationality Act ("INA"), which precludes approval of an 1-130 petition if the beneficiary has ever sought benefits based on a marriage entered into to evade immigration laws (i.e., a "sham marriage"). (Compl. ¶¶ 1, 16); 8 U.S.C. 1154(c). This was based on Plaintiff Shen's prior marriage to Selena Gonzalez, a United States citizen whose December 2014 I-130 petition on behalf of Plaintiff was denied on February 10, 2016. (See Compl. ¶¶ 12-16). On June 22, 2021, the Board of Immigration Appeals ("BIA") upheld the USCIS's decision to deny Plaintiff Yu's I-130 petition. (See Compl. ¶¶ 1, 17, Exh. B). Plaintiffs now seek reversal of the BIA decision under the APA on the grounds that it is arbitrary, capricious, an abuse of discretion, and unsupported by substantial evidence.

Defendants filed an Answer to the Complaint on October 4, 2021 (Dkt. No. 18), followed by Certified Administrative Record ("Administrative Record" or "CAR") filed under seal on January 12, 2022 (Dkt. No. 26).[2] The parties then filed briefs regarding the

---

[2]   The Administrative Record is filed as two volumes – Dkt. No. 26-1 ("1 CAR") and Dkt. No. 26-2 ("2 CAR"), respectively. Consistent with the parties' briefs, citations to the Administrative Record refer to the page numbers assigned by the

1  Administrative Record: (1) Plaintiffs' Opening Brief ("Pls. Opening
2  Br.," Dkt. No. 28); (2) Defendants' Response (Dkt. No. 29); (3)
3  Plaintiffs' Reply ("Pls.' Reply," Dkt. No. 30); and (4) Defendants'
4  Surreply (Dkt. No. 31).

5

6      The parties have consented to proceed before a United States
7  Magistrate Judge (Dkt. Nos. 16-17) and submitted this matter on
8  the briefs and Administrative Record. (See Dkt. No. 21).  The Court
9  has taken the matter under submission without oral argument.  See
10 C.D. Cal. C. R. 7-15. For the reasons stated below, the Court
11 concludes that judgment should be entered in favor of Defendants
12 and against Plaintiffs.

13

14                  **LEGAL AND FACTUAL BACKGROUND**

15

16 **A.    <u>I-130 Petitions</u>**

17

18     Spouses of U.S. citizens may obtain lawful permanent resident
19 status as an immediate relative of the U.S. citizen. See 8 U.S.C.
20 § 1151(a)(1), (2)(A)(i). The U.S. citizen (the "petitioner") must
21 file a Form I-130 petition with USCIS on behalf of his or her non-
22 citizen spouse (the "beneficiary") to have the beneficiary
23 classified as an "immediate relative."[3] 8 U.S.C. §
24
   Court's electronic case filing system (CM/ECF) in the two
25 respective volumes.

26 [3]   If the I-130 petition is granted, the beneficiary spouse must
27 file a Form I-485 Application to Register Permanent Residence or
   Adjust Status to adjust his or her status to lawful permanent
   resident. 8 U.S.C. § 1255.
28

1154(a)(1)(A)(i). "After an investigation of the facts in each case," USCIS decides whether to approve the Form I-130 petition. 8 U.S.C. § 1154(b). "[N]o petition shall be approved if" the Government determines that the beneficiary spouse has "attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 U.S.C. § 1154(c)(1); see also 8 C.F.R. § 204.2(a)(1)(ii) ("The director will deny a petition for immigrant visa classification filed on behalf of any alien for whom there is substantial and probative evidence of . . . an attempt or conspiracy" to enter into a marriage for the purpose of evading the immigration laws.).

A "marriage entered into for the purposes of circumventing immigration laws is considered a fraudulent marriage or sham marriage and is not recognized as enabling an alien spouse to obtain immigration benefits." Avitan v. Holder, 2011 WL 499956 at *7 (N.D. Cal. Feb. 8, 2011) (citing Vasquez v. Holder, 602 F.3d 1003, 1014 n.11 (9th Cir. 2010)). A person's second I-130 petition may be denied on the basis that a prior marriage was fraudulent even if USCIS had not affirmatively determined there was fraud when investigating the prior marriage. See Garcia-Lopez v. Aytes, 2010 WL 2991720 at *2 (N.D. Cal. Jul. 28, 2010) (denying second I-130 petition because USCIS determined that petitioner had previously entered into a fraudulent marriage, even though his first I-130 petition was denied for failure to prosecute). When marriage fraud from a previous marriage is the basis for denying an I-130 petition, the USCIS district director "should not give conclusive effect to determinations made in a prior proceeding, but, rather, should

reach his [or her] own independent conclusion based on the evidence before him [or her]." 8 C.F.R. § 204.2(a)(1)(ii).

USCIS "bears the initial burden of producing evidence of marriage fraud." Alabed v. Crawford, 691 F. App'x 430, 431 (9th Cir. 2017). The USCIS's burden of proof requires "substantial and probative evidence," a standard that is "at least as high as a preponderance of the evidence." Zerezghi v. United States Citizenship & Immigr. Servs., 955 F.3d 802, 816 (9th Cir. 2020) ("[G]iven the seriousness of a marriage-fraud determination and the risk of a finding being made in error, the Constitution requires at least a preponderance of the evidence before imposing this sanction.").[4] In making a marriage fraud determination, USCIS "may rely on any relevant evidence, including evidence having its origin in prior [USCIS] proceedings involving the beneficiary, or in court proceedings involving the prior marriage." See Matter of Tawfik, 20 I. & N. Dec. 166, 168 (BIA 1990). Direct evidence of intent is not required. Sablan v. Nielson, 2018 WL 5880174, at *6 (C.D. Cal. Oct. 25, 2018) (noting that "courts have upheld marriage fraud determinations based on circumstantial evidence alone") (citing Patel v. Johnson, 2015 WL 12698427, at *7-9 (C.D. Cal. Oct. 7, 2015); Ogbolumani v. Napolitano, 557 F.3d 729, 734 (7th Cir. 2009); Liu v. Lynch, 149 F. Supp. 3d 778, 788 (S.D. Texas 2016)). The USCIS "often uses documents in its possession, interviews with

---

[4] As the Ninth Circuit explained in Zerezghi, this "substantial-and-probative-evidence standard is a standard of *proof*, not of review." 955 F.3d at 815. It is therefore distinct from the less-demanding "substantial evidence" standard of review employed by the reviewing court. See id. at 814-15 & n.6.

the couple, and observations made during site visits to the couple's marital residence." Zerezghi, 955 F.3d at 805 (citing Matter of Singh, 27 I. & N. Dec. 598, 600-01 (BIA 2019)).

Where the record contains substantial and probative evidence of marriage fraud, USCIS must issue to the petition a Notice of Intent to Deny the petition ("NOID"). 8 C.F.R. § 103.2(b)(8)(iv). The NOID informs the petitioner of the "derogatory information" and provides the petitioner with a chance to rebut that information. Alabed v. Crawford, 2015 WL 18889289 at *9 (E.D. Cal. Apr. 24, 2015) (citation omitted). Upon receiving the NOID, "the burden then shifts back to the petitioner to establish that the marriage is bona fide and to rebut the evidence of fraud." Alabed, 691 F. App'x 430, 431 (9th Cir. 2017) (citing Matter of Kahy, 19 I.&N. Dec. 803, 806-807 (BIA 1988)). "To qualify as a bona fide marriage, a marriage must be based on an actual and legitimate relationship and the focus of any inquiry is whether the parties intended to establish a life together." Yu An v. Napolitano, 15 F. Supp. 3d 976, 981 (N.D. Cal. 2014) (citing Nakamoto v. Ashcroft, 363 F.3d 874, 882 (9th Cir. 2004)).

To satisfy this burden, the petitioner "must offer evidence that is probative of the motivation for marriage, not just the bare fact of getting married." Alabed, 691 F. App'x at 432 (quoting Malhi v. INS, 336 F.3d 989, 994 (9th Cir. 2003)). "Evidence of the marriage's bona fides may include: jointly-filed tax returns; shared bank accounts or credit cards; insurance policies covering both spouses; property leases or mortgages in both names; documents

6

reflecting joint ownership of a car or other property; medical records showing the other spouse as the person to contact; telephone bills showing frequent communication between the spouses; and testimony or other evidence regarding the couple's courtship, wedding ceremony, honeymoon, correspondences, and shared experiences." Agyeman v. INS, 296 F.3d 871, 882-83 (9th Cir. 2002). "If the petitioner cannot rebut the charge to the [USCIS's] satisfaction, the petition is denied." Zerezghi, 955 F.3d at 805.

The petitioner may appeal the USCIS's decision with the BIA. See 8 C.F.R. §§ 103.3(a), 1003.1(b)(5).

**B.   Shen's Prior Marriage and Prior I-130 Petition**

On January 23, 2013, Plaintiff Shen, a Chinese citizen, arrived in the United States and was lawfully admitted as a student on an F-1 visa. (2 CAR 246). In June 2014, he first met Gonzalez at a McDonald's in Los Angeles where she was working. (2 CAR 174). Two months later, on August 28, 2014, Shen and Gonzalez married in Alhambra, California. (2 CAR 246, 251). Gonzalez filed a I-130 petition with USCIS on December 4, 2014, seeking to have Shen classified as an immediate relative as the spouse of a U.S. Citizen. (2 CAR 128, 157). Concurrently, Shen filed a Form I-485, Application to Register Permanent Residence or Adjust Status. (2 CAR 128). Shen and Gonzalez claimed that they lived together at 11550 Paramount Boulevard, Apt. 18, Los Angeles, California. (2 CAR 246). The documentary joint evidence with the I-130 petition included Time Warner Cable bills, insurance policy statements,

Chase Bank account statements, 2014 federal income tax returns, and gas company bills. (See 2 CAR 252-307).

On April 29, 2015, Shen and Gonzalez appeared for interviews at the USCIS office in Los Angeles in connection with the applications. (2 CAR 174-76). During their separate interviews, they both testified, among other things, that they met at McDonald's in June 2014 and no one introduced them; they began dating in June 2014; they paid $1050.00 for rent to Ron Byrd, the apartment manager; they had a gas stove in the apartment; Gonzalez met Shen's mother in February 2015; and Shen's parents resided in China. (See 2 CAR 174-76). However, they gave differing answers to two questions. First, when asked the last time they went out on a date, Gonzalez responded that they went to In & Out Burger in Downey on April 26, 2015, whereas Shen responded that they went to Stonewood Mall two weeks ago with Gonzalez's sister and had lunch at Mongolian Grill. (2 CAR 175). Second, when asked what was the last movie they went to see together, Gonzalez answered "Unfriended," but Shen answered "Fast and Furious 7." (2 CAR 175-76). After the interview, the immigration officer referred the file for suspected fraud. (2 CAR 163).

On July 15, 2015, two USCIS officers conducted an unannounced site visit at the address of record (11550 Paramount Boulevard, Apt. 18). (2 CAR 165-66, 168-70). The officers knocked on the door, but no one answered. (2 CAR 169). The officers interviewed neighbors from two adjacent apartments. The first neighbor recognized Shen as having lived there for six months and recognized

Gonzalez as a visitor whom he had seen only twice before. (2 CAR 169). He also stated that Shen did not regularly live at the apartment, but sometimes would be seen there for two or three weeks straight and would then "disappear[]." (2 CAR 169). The second neighbor recognized Shen as having lived there for five to six months but noted that he was rarely there. (2 CAR 169). The officers then interviewed the property manager, who recognized Shen and Gonzalez as the married couple from the address of record. (2 CAR 169). He had seen Shen three or four days earlier, and he recalled that Gonzalez had come to the apartment three weeks after Shen moved in. (2 CAR 170).

That same day, the officers conducted an unannounced site visit to 11153 S. San Pedro Street, Los Angeles, California, which was listed as Gonzalez's address in public records. (2 CAR 166, 170-71). When the officers announced their presence at the locked front gate, a woman appeared in the window, identified herself as Gonzalez's mother, and told the officers that Gonzalez lived there. (2 CAR 170). A man then came out of the house, identified himself as Gonzalez's father, and told the officers that Gonzalez lived with them and did not live anywhere else. (2 CAR 170). He also said she was single and had no boyfriend. (2 CAR 171). When shown a picture of Shen, the father denied knowing him. (2 CAR 171). At that time, a woman claiming to be Gonzalez's sister joined the conversation and said Gonzalez sometimes lived with them, and she did not know where else Gonzalez lived or if Gonzalez was married. (2 CAR 171).

On September 11, 2015, Shen and Gonzalez submitted additional documents consisting of bank statements, utility bills, car and renter's insurance policies, and photographs. (2 CAR 178). On September 22, 2015, USCIS issued a NOID stating that USCIS believed the marriage was fraudulent based on the site visits and two inconsistent answers in the interview. (2 CAR 157-61). On October 7, 2015, USCIS issued a notice denying the I-130 petition for failure to demonstrate a bona fide marriage. (2 CAR 151-54). This premature decision was apparently the result of USCIS mistakenly construing Shen and Gonzalez's additional documents from September 11 as a response to the NOID. (See 2 CAR 153). On October 15, 2015, Gonzalez and Shen submitted a motion to reopen (2 CAR 137-38), which was later granted (2 CAR 135).

Gonzalez and Shen also submitted a response to the NIOD including declarations from Shen, Gonzalez, Gonzalez's sister, and the property manager at the Paramount Boulevard address. (2 CAR 139-49). Gonzalez's declaration explained that their differing answers to two interview questions was due to, first, a "different definition of a 'date' after marriage," and second, "a very fine lapse of memory about a minute detail." (2 CAR 145). She noted that they "have evidence of either receipts or movie tickets to show all the events that occurred." (2 CAR 145). The property manager's declaration stated that he told the investigating officers that he knew Shen and Gonzalez were married and had lived in the apartment together since October 2014. (2 CAR 149). Gonzalez's sister's declaration explained that when the officer asked if Gonzalez lived with her and her parents at that house, she replied "no" and said

Gonzalez "lives with her husband Shizhe [Shen] on 11550 Paramount Blvd. Apt. 18, Downey, CA 90241." (2 CAR 146).

On February 10, 2016, USCIS issued a decision denying the I-130 petition. (2 CAR 127-32). The decision noted that the newly submitted evidence failed to explain Gonzalez's father's statement from the July 15 interview and that the declaration from Gonzalez's sister contradicted her earlier statements and was submitted without any confirming identification. (2 CAR 131). The decision also rejected Shen's and Gonzalez's explanations for their differing interview answers. (2 CAR 131).

When the decision issued, Shen and Gonzalez had been separated since November 18, 2015. (1 CAR 297). Their divorce was finalized on May 25, 2016. (1 CAR 295).

C.   **Shen and Yu's Marriage and I-130 Petition**

Plaintiffs Shen and Yu married on September 12, 2016. (1 CAR 289, 294). USCIS received Yu's I-130 petition to have Shen classified as an immediate relative on October 4, 2016. (1 CAR 289). Included with the petition was an affidavit of support from Theodore S. Ebner who stated: "Shizhe [Shen] met his ex-wife Selena [Gonzalez] in 2014 and got married in a heartbeat. Although in retrospect, [Shen] admitted he should have treated his relationship with Selena Gonzalez with more circumspect instead of passion, I have to argue they entered the marriage with good faith." (2 CAR 33). On June 7, 2018, USCIS issued a NOID stating that Yu's I-130

1  petition would be denied because Shen's prior marriage to Gonzalez
2  was fraudulent. (1 CAR 285-87).

3

4       Shen and Yu responded to the NOID on July 3, 2018, and provided
5  additional supporting evidence, including a letter from Yu, support
6  letters from Shen's friends, copies of the declarations submitted
7  from the prior response to the 2015 NOID, a new declaration from
8  the property manager at the Paramount Boulevard address, bank
9  statements and bills from the prior marriage, and photographs from
10  the prior marriage. (1 CAR 128, 135-256).

11

12       On September 6, 2018, USCIS issued a denial of Yu's I-130
13  petition based on Shen's prior marriage being fraudulent. (1 CAR
14  125-31). In reviewing the totality of the evidence, USCIS noted
15  that Yu's current marriage to Shen had been established as bona
16  fide. (1 CAR 129). The decision further noted that the 2015
17  declarations were either unsupported by documentary evidence or
18  contradicted by the 2015 interview and site visits, and the bank
19  statements reflected only minimal joint activity. (1 CAR 129-30).

20

21       Yu appealed USCIS's decision to the BIA on October 3, 2018,
22  and submitted new evidence. (1 CAR 15; see 1 CAR 40). On June 22,
23  2021, the BIA dismissed the appeal, concluding that there was
24  substantial and probative evidence that Shen's prior marriage to
25  Gonzalez was not bona fide and was entered into for the purpose of
26  evading immigration laws. (1 CAR 3-5).

27

28

1

**STANDARD OF REVIEW**

2

3      The APA provides that a reviewing court must set aside an

4 agency's final action if the action was "arbitrary, capricious, an

5 abuse of discretion, or otherwise not in accordance with law." 5

6 U.S.C. § 706(2)(A). This is a "highly deferential" standard under

7 which there is a presumption that the agency's action is valid "if

8 a reasonable basis exists for its decision." Kern Cty. Farm Bureau

9 v. Allen, 450 F.3d 1072, 1076 (9th Cir. 2006). An agency decision

10 is arbitrary and capricious where it "relied on factors which

11 Congress has not intended it to consider, entirely failed to

12 consider an important aspect of the problem, offered an explanation

13 for its decision that runs counter to the evidence before the

14 agency, or is so implausible that it could not be ascribed to a

15 difference in view or the product of agency expertise." Motor

16 Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S.

17 29, 43 (1983); San Luis & Delta-Mendota Water Auth. v. Locke, 776

18 F.3d 971, 994-95 (9th Cir. 2014). In evaluating whether an agency's

19 decision meets this standard, "[courts] ask whether the agency

20 'considered the relevant factors and articulated a rational

21 connection between the facts found and the choice made.'" Natural

22 Res. Def. Council v. U.S. Dep't of the Interior, 113 F.3d 1121,

23 1124 (9th Cir. 1997) (quoting Pyramid Lake Pauite Tribe of Indians

24 v. U.S. Dep't of the Navy, 898 F.2d 1410, 1414 (9th Cir. 1990)).

25

26      A court reviewing under the APA may also "hold unlawful and

27 set aside agency action, findings, and conclusions" that are

28 "without observance of procedure required by law" or "unsupported

by substantial evidence," among other grounds. 5 U.S.C. § 706(2)(D), (E). In determining whether a decision is supported by substantial evidence in the record, the Court will not substitute its own judgment for that of the agency but rather considers whether the decision is based on relevant evidence that a reasonable mind might accept as adequate to support the agency's conclusion. San Luis & Delta-Mendota Water Auth. v. Jewell, 747 F.3d 581, 601 (9th Cir. 2014). This "is an extremely lenient standard that asks courts to consider only whether the administrative record 'contains sufficien[t] evidence to support the agency's factual determinations.'"[5] Zerezghi, 955 F.3d 802, 814 (9th Cir. 2020) (quoting Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019)).

Under the APA, the district court's review of an agency's decision is usually limited to the administrative record. 5 U.S.C. § 706; see also County of Los Angeles v. Shalala, 192 F.3d 1005, 1011 (D.C. Cir. 1999) (when reviewing final agency action, the district court is not managing a "garden variety civil suit," but rather "sits as an appellate tribunal"). In reviewing an administrative decision under the APA, "there are no disputed facts that the district court must resolve." Occidental Eng'g Co. v. INS, 753 F.2d 766, 769 (9th Cir. 1985). Instead, "the function of the

---

[5]   As noted above, this standard is distinct from the "substantial and probative evidence" standard of proof that the agency must satisfy when ruling on the petition. See Manor v. Mayorkas, 2021 WL 4777000, at *1 (9th Cir. Oct. 13, 2021) ("While the agency's finding of marriage fraud must be based on 'substantial and probative evidence, on review, we must examine whether there was substantial evidence to support the finding.'") (quoting Zerezghi, 955 F.3d at 814 n.6) (some internal quotation marks and alterations omitted).

district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." Id.; see also City & County of San Francisco v. United States, 130 F.3d 873, 877 (9th Cir. 1997).

When the "BIA conducts a de novo review of the [Immigration Judge's] ("IJ('s)")] decision," the district court reviews "the BIA's decision rather than the IJ's, except to the extent that the BIA expressly adopts the IJ's ruling." Salazar-Paucar v. INS, 281 F.3d 1069, 1073 (9th Cir. 2002); Alaelua v. INS, 45 F.3d 1379, 1382 (9th Cir. 1995) (reviewing both the BIA and Immigration Judge's decisions when it is clear that the BIA decision "clearly incorporates" the Immigration Judge's decision); see also Patel v. Johnson, 2015 WL 12698427, at *6 (C.D. Cal. Oct. 7, 2015) (applying this to USCIS decision upheld by BIA).

**DISCUSSION**

Plaintiffs contend that the BIA's decision was arbitrary, capricious, and not in accordance with law. (See Pls.' Opening Br. at 3, 21; Pls. Reply at 2-5, 7). They also argue that the procedures employed by the USCIS were improper and/or deficient. (See Pls.' Opening Br. at 16-17; Pls.' Reply at 6-7). For the reasons stated below, Plaintiffs fail to establish any basis for relief from the BIA's decision to deny the I-130 petition.

**A.    Plaintiffs Fail to Demonstrate that the BIA's Decision Was Arbitrary and Capricious**

The BIA's denial of Plaintiffs' I-130 petition was based on its finding that the petition was barred by section 204(c) of the Immigration and Naturalization Act because it was "'more than probably true' that [Shen's] prior marriage was fraudulent." (1 CAR 5) (quoting <u>Matter of Singh</u>, 27 I. & N. Dec. at 607). The BIA provided several grounds for this decision which, taken together, reasonably constitute substantial and probative evidence in support of the decision.

First, the BIA supported this determination by referencing the USCIS's findings that Shen and Gonzalez had "provided inconsistent statements concerning their last date and last movie they had seen together outside of their home." (1 CAR 3-4; <u>see</u> 2 CAR 128). Specifically, on April 29, 2015, as noted above, when asked the last time they went out on a date, Gonzalez responded that they went to In & Out Burger in Downey on April 26, 2015, whereas Shen responded that they had lunch with Gonzalez's sister at Mongolian Grill in the mall two weeks prior. (2 CAR 175). When asked what was the last movie they went to see together, Gonzalez answered "Unfriended," but Shen answered "Fast and Furious 7." (2 CAR 175–76).

Plaintiffs have contended that the first discrepancy was due to Shen's and Gonzalez's differing interpretations of a "date," which led Shen to answer with their last date at a more "formal"

restaurant. (See Pls.' Opening Br. at 15; Pls.' Reply at 3; 1 CAR 140; 2 CAR 175). The BIA rejected this explanation, however, because both Shen and Gonzalez responded with restaurants, and meeting Gonzalez's sister for lunch at a restaurant in the mall does not suggest a more "formal" occasion. (1 CAR 4). The BIA's rejection on this point is reasonable, as neither of the purported dates seems particularly more "formal" (or "date-like") such that it might justify these conflicting answers.

Plaintiffs have also argued that the movie discrepancy was due simply to a "a memory lapse" regarding whether they had last seen "Unfriended" or "The Fast and the Furious 7." (Pls.' Opening Br. at 15; Pls.' Reply at 3). Plaintiffs assert that both these movies were released in April 2015, and that they provided the movie tickets to the examiner. (Id.). The BIA also rejected this explanation. (See 1 CAR 4). Moreover, as Plaintiffs acknowledge, no such movie tickets are in the record. Given Plaintiffs' vague explanation and the lack of support in the record, the BIA reasonably considered this discrepancy in denying the petition.

Plaintiffs contend that in relying on these two inconsistent interview responses, the BIA improperly ignored the fact that Shen and Gonzalez answered many other questions consistently, such as regarding "when and how they met, how much they paid in rent, that the stove was gas, that they did not attend school, that they enjoyed shopping and movies and so forth." (Pls. Opening Br. at 15; Pls. Reply at 2-3). However, these other questions generally concerned facts about each other which the pair could have learned

17

regardless of whether they had a bona fide marriage relationship. In contrast, the two questions answered inconsistently relate to the nature or existence of a shared, ongoing relationship at the time of the interview. As such, it was reasonable for the BIA to rely on Shen and Gonzalez's inconsistent responses to these latter questions, notwithstanding their consistent answers to other questions.

The BIA also supported its decision by referencing the July 2015 site visits in which USCIS officers determined that Gonzalez did not reside at the couple's claimed address, but instead lived with her mother and father, and her father did not recognize Shen and said Gonzalez was single. (1 CAR 4; see 2 CAR 129). The BIA "acknowledge[d] the apartment building manager's statement to USCIS officers that [Shen and Gonzalez] lived together at his apartment," but the BIA found that the evidence nonetheless failed to adequately explain why Gonzalez's parents said she lived with them, and her father said he did not recognize Shen. (1 CAR 4). Plaintiffs contend that the BIA should have given greater weight to the building manager's statement and rejected statements by Gonzalez's father, who, according to Plaintiffs, was "lying to the investigating officers by claiming he did not know who Plaintiff Shen was." (Pls.' Reply at 4). Plaintiffs assert that they demonstrated this by submitting a photograph of Shen with Gonzalez's father. (Id.). However, as Defendants point out, the photograph in the record before the BIA was undated,[6] and it is

---

[6]   The record under consideration by the BIA consisted of the evidence that had been submitted to the USCIS, including an undated

unaccompanied by any other supporting evidence regarding Gonzalez's father's familiarity with Shen prior to the statement provided to the officers during the site visit. Even assuming the photograph predated the site visit, that would not necessarily mean the father was lying when he said he did not recognize Shen. Notwithstanding Plaintiffs' contentions, this Court cannot reweigh the evidence. The father's statements that he did not recognize Shen's picture, and that Gonzalez was single and lived with her parents, reasonably support the BIA's finding that Gonzalez and Shen did not have a bona fide marriage.

In addition, the BIA noted that even though the couple had a joint bank account, the account appeared mainly to be Shen's; and that while Gonzalez was named on Shen's car insurance policy, Gonzalez's declaration indicated that she did not drive (1 CAR 4; see 1 CAR 129-30, 166-204, 206-08; 2 CAR 130). Plaintiffs argue that the limited evidence of shared finances and transactions can be explained by the fact that "they were young, low income and had no assets." (Pls.' Reply at 5). Regardless, the BIA reasonably

---

version of the referenced photograph submitted in response to the 2015 NOID and the 2018 NOID. (See 1 CAR 252; 2 CAR 147). Although Plaintiffs later submitted a dated version of the photograph to the BIA, along with other new evidence, the BIA expressly declined to consider any newly submitted evidence because Plaintiffs had been given adequate notice and opportunity to submit such evidence on review before the USCIS. (See 1 CAR 5); see also Matter of Soriano, 19 I. & N. Dec. 764 (BIA 1988) (BIA will not consider new evidence on appeal where petitioner had notice of deficiencies and opportunity to present it earlier); 8 C.F.R. § 1003.1(d)(3)(iv)(A) ("The Board will not engage in factfinding in the course of deciding cases . . . .").

determined that the financial and insurance documentation at least did not weigh strongly in favor of finding a bona fide marriage.

Plaintiffs contend that the BIA decision was arbitrary and capricious because it "fail[ed] to mention" some of the evidence in the record, including some affidavits, cable and utility bills, tax returns, and photographs. (Pls.' Reply at 5). However, the BIA was not required to specifically mention or discuss every piece of evidence in the record. See Szonyi v. Whitaker, 915 F.3d 1228, 1238 (9th Cir.), opinion amended, 942 F.3d 874 (9th Cir. 2019) ("[T]his court generally presumes that the BIA thoroughly considers all relevant evidence in the record."); Garcia v. Holder, 749 F.3d 785, 791 (9th Cir. 2014) ("Contrary to [petitioner's] assertion, we do not require that 'the BIA . . . discuss each piece of evidence submitted.'"). Moreover, Plaintiffs do not demonstrate that any of this unmentioned evidence should have led to a difference decision.

Accordingly, Plaintiffs have failed to demonstrate that the BIA's decision was arbitrary, capricious, or not in accordance with law. To the contrary, the BIA "considered the relevant factors and articulated a rational connection between the facts found and the choice made." Natural Res. Def. Council v. U.S. Dep't of the Interior, 113 F.3d at 1124 (quoting Pyramid Lake Pauite Tribe of Indians, 898 F.2d at 1414. The BIA reasonably determined that the evidence in the record, taken together, constituted substantial and probative evidence that Plaintiff Shen's prior marriage was fraudulent, and denial of Plaintiffs' I-103 petition was therefore required by section 204(c) of the Immigration and Nationality Act.

**B.**   **Plaintiffs Fail to Demonstrate Any Procedural Deficiencies Warranting Relief**

Plaintiffs contend that the USCIS used improper procedures by questioning Shen and Gonzalez separately in their initial interviews and depriving them of a second interview. (Pls.' Opening Br. at 16-17; Pls.' Reply at 6). Plaintiffs assert that Shen and Gonzalez should have been interviewed together first, followed by separate interviews only if the agency found reason to suspect the marriage was fraudulent, in accordance with the procedures set forth in Stokes v. INS, No. 74 Civ. 1022 (S.D.N.Y. Nov. 10, 1976). (Pls.' Opening Br. at 16-17). However, as Defendants point out, this procedural requirement in the Stokes consent decree has no force or effect on I-130 petitions filed outside of New York.[7] See, e.g., Abdulraman v. Whitaker, 2019 WL 9784647, at *3 (W.D. Mo. Jan. 14, 2019) (Stokes holding does not bind courts for I-130 petitions filed outside of New York). Plaintiffs otherwise do not identify any authority indicating that their interviews violated applicable rules, regulations, or procedures.

Although Plaintiffs concede that the Stokes procedures were not required, they assert that "the same principles should apply here." (Pls. Reply at 6). Plaintiffs vaguely contend that they were thus deprived of a fair opportunity to present their case. (Id.).

---

[7]    Stokes resulted in a consent decree governing "all interviews and examinations held before presiding immigration officers in connection with the determination of I-130 spouse visa petitions filed in the New York District Office of the INS." Braimah v. INS, 1995 WL 390108, at *2 (S.D.N.Y. July 3, 1995).

Although unclear, Plaintiffs seems to suggest that the interview procedure employed here shows that the USCIS was prejudiced against their case from the beginning and "sought[] evidence to support its theory." (Pls.' Reply at 6). However, they fail to identify any persuasive evidence of prejudice. They also fail to demonstrate any violation of their due process rights.[8] It is undisputed that Plaintiffs were provided with the NOID on Jun 7, 2018, giving them prior notice of the grounds for USCIS's intended denial of their petition and an opportunity to submit rebuttal evidence. (1 CAR 285-87). Plaintiff Shen and Gonzalez similarly had been provided with such notice and opportunity for rebuttal with respect to their petition. (2 CAR 157-61). After the notice and opportunity for rebuttal, Plaintiffs were given a final decision denying the petition. (1 CAR 125-31; 2 CAR 127-32). That decision was based on several different specific reasons supported by evidence in the record. Plaintiffs were then able to appeal the decision to the BIA.

"[N]ot every case requires a formal hearing or an opportunity to cross-examine witnesses to satisfy due process." <u>Shashlov v. Sessions</u>, 2017 WL 6496440, at *3 (C.D. Cal. Dec. 4, 2017). To

---

[8]   "A threshold requirement to a substantive or procedural due process claim is [a] plaintiff's showing of a liberty or property interest protected by the Constitution." <u>Wedges/Ledges of Cal., Inc. v. City of Phoenix</u>, 24 F.3d 56, 62 (9th Cir. 1994). The Ninth Circuit has held that I-130 petitioners have a constitutionally protected interest in the grant of their I-130 petitions and are therefore entitled to due process in such proceedings. See <u>Zerezghi v. United States Citizenship & Immigr. Servs.</u>, 955 F.3d 802, 808 (9th Cir. 2020) (citing <u>Ching v. Mayorkas</u>, 725 F.3d 1149, 1156 (9th Cir. 2013)).

determine whether further procedures are required, courts consider three factors: (1) the private interest at stake; (2) the risk of erroneously depriving the petitioner of that interest under the procedures currently in use, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the burdens of adding or substituting the procedures used. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Plaintiffs do not address these factors. Even assuming the first and third factors weigh in Plaintiffs' favor,[9] Plaintiffs have offered no basis to find that a hearing or other procedural safeguards would have any significant value in these circumstances, particularly where the agency's decision did not rest on any single statement or piece of evidence, and Plaintiffs were able to submit declarations and other evidence to rebut the challenged statements or other evidence. Compare Ching, 725 F.3d at 1158 (due process required hearing and opportunity for cross-examination where USCIS based its marriage fraud determination solely on a six-sentence statement from an ex-spouse, and the

---

[9]   The Ninth Circuit has held that the first factor weighed in favor of plaintiffs in other I-130 petition cases, in part because the noncitizen spouse in those cases faced imminent removal upon the denial of the petition. See Zerezghi, 955 F.3d at 810; Ching, 725 F.3d at 1157. As it does not appear that Plaintiff Shen faces imminent removal, this factor at least does not seem to weigh as strongly in Plaintiffs' favor. See, e.g., Graziani v. Barr, 2021 WL 822706, at *5 (C.D. Cal. Jan. 21, 2021) (private interests at stake were minimal because noncitizen spouse was not in removal proceedings), aff'd sub nom. Graziani v. Whitaker, 2021 WL 5850908 (9th Cir. Dec. 9, 2021); Shashlov v. Sessions, 2017 WL 6496440, at *5 (C.D. Cal. Dec. 4, 2017) (same). Regardless, the Court need not determine whether the first and third Matthews factors weigh in Plaintiffs' favor here because Plaintiffs have failed to articulate any basis to find a due process violation.

petitioners submitted substantial, uncontested documentary evidence to corroborate claim that the marriage was bona fide), with _Alabed_, 691 F. App'x at 432 (no right to hearing for cross-examination where, unlike _Ching_, USCIS's decision did not rely on one statement, petitioners had ability to submit declarations from witnesses they wished to cross-examine, and their rebuttal evidence was less compelling); _Ruhe v. Barr_, 2019 WL 4492953, at *7 (C.D. Cal. June 26, 2019) (same); _Shashlov v. Sessions_, 2017 WL 6496440, at *4 (C.D. Cal. Dec. 4, 2017) (same).

Accordingly, Plaintiffs have failed to demonstrate that any relief is warranted based on improper or constitutionally deficient procedures.

<strong>CONCLUSION</strong>

For the foregoing reasons, **IT IS ORDERED** that Judgment be entered in favor of Defendants and against Plaintiffs.

**IT IS FURTHER ORDERED** that the Clerk serve copies of this Order and the Judgment herein on counsel for the respective parties.

DATED: April 18, 2022

/s/
_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

24